M. L. WEEMS v. A. S. LATHROP.

1. RECEIVER.   The appointment of a receiver continues during the pendency of the suit, and until the case is tried and decided, unless the term of his office is limited by the order making the appointment.

2. POWERS OF RECEIVER.   An order appointing a receiver, which recites, " to take possession of said trust negroes, now remaining on said plan- " tation, and hire out the same from year to year, until the termination " of this suit," authorizes the receiver to receive payment of notes taken by and payable to himself, for the hire of the trust property remaining in his hands at maturity ; and whether he has such authority or not, but actually collects, and fails to account, the sureties are liable on their bond for the amount so collected.

3. *Quære ?*   Is a receiver chargeable with interest on money reported by him to the court as having been collected, and still remaining on hand, where no order had been made requiring the payment of the money into court ?

APPEAL from Matagorda.   Tried below before the Hon. Wm. H. Burkhart.

In the early part of the winter of 1858 Henry C. Manor and James A. Coker, as administrators of William Manor, brought suit against the heirs at law of their intestate, and others, supposed to be interested, to establish the rights of the parties in the hire of certain negroes named in the petition, of which their intestate died possessed, and for partition.   In their petition the complainants asked that a receiver be appointed, " with all proper and necessary directions to take possession of

" the negroes, and *hire them out from year to year until the*
" *termination of the suit.*"

Before filing the petition it was presented to the judge in
chambers for his order appointing a receiver as prayed for.
The court in chambers made an order appointing John W.
Brooks " receiver according to the prayer of the petition,"
who, upon giving bond with surety, to .be approved by the
clerk of the county in which the suit was to be filed, in the sum
of twenty thousand dollars, conditioned for the faithful dis-
charge of his duties as receiver, was authorized to take into his
possession the slaves named in the petition, and hire them out
at public auction on the first Tuesday in January, 1859, for the
term of one year, taking bond or note, and security for the
hire, and to report his action in the premises at the next term
of the District Court for Brazoria County.

The receiver gave bond, with John Jones and appellant as
sureties, conditioned " faithfully to discharge the duties of
" receiver in said cause," and payable to the District Court of
Brazoria county, which was approved and filed in December,
1858.

At the next term, which was the April term, 1859, of the
court for Brazoria County, the receiver made his report, show-
ing that, pursuant to his appointment and qualification, he took
possession of the slaves and hired them out at the time and in
the manner specified in the judge's order made in chambers,
and giving particulars of the amount for which each hired, to
whom, and the names of the sureties by him taken to secure
the payment of the hire at the end of the year 1859. The
report was filed twelfth of April, 1859, and, the same day, was
passed and approved by the court. No further order was then
made as to the duties of the receiver ; but, at the September
term, 1859, of the court, the following order was made and
entered in said cause by consent of parties : " This day came
" the parties, by their attorneys, and, upon agreement of par-
" ties, it is ordered by the court that the receiver, John W.
" Brooks, be required to hire out the negroes as before, on the

" first Tuesday in January, 1860, and report his action to the
" next term of this court."

Under this order the receiver hired the slaves for that year,
but made no report of hiring until the April term, 1865, when
he reported a hiring for the year 1864, "and all parties to the
" suit being represented in court, and making no objection,
" the hiring (or report) was approved, and then, for reasons
" recited in the record, the parties agreed to a private hiring
" from year to year until further ordered by the court, and the
" receiver was to make report of the terms of hiring at the
" Spring term of the court each year."

At the January term, 1871, it was made to appear to the
court that the receiver, Brooks, had died; wher an order was
made appointing A. S. Lathrop "receiver as    ll the prop-
" erty in controversy in said suit, upon his g'  ng bond," etc.,
which he did.

September, 1872, Lathrop, as receiver  ider the above
appointment, instituted this suit against 1 /eems as one of
Brooks' sureties, on his bond given under the judge's order,
made in chambers in December, 1858; alleging the death of
Brooks, and that his wife is acting as his executrix; that his
estate is insolvent, and that Jones, the other surety, is dead
and insolvent, and making no one party defendant except
Weems.

Brooks took possession of the slaves, and, on the first Tues-
day in January, 1859, hired them out at the aggregate of six
thousand dollars or more. At the October term, 1859, Brooks
was ordered to hire out the slaves for the year 1860, the hiring
to take place on the first Tuesday in January, 1860. Of the
hiring Brooks made no report. Brooks continued to act as
receiver until his death, in 1870.

After amendments to the pleading by both parties, the cause
came on for trial on the seventh day of October, 1873. General
and special demurrers were overruled as to so much of the
petition as sought to recover the hire of said trust negroes for
the years 1859 and 1860, the court restricting the plaintiff
14

below from recovering of defendant anything for the hire of the slaves for the years 1861, 1862, and 1863. A verdict was rendered in favor of Lathrop, as receiver, for four thousand nine hundred and seventy-eight dollars, with interest at eight per cent. per annum, from the first day of January, 1860, and for four hundred and sixty-seven dollars, with eight per cent. per annum interest, from the first day of January, 1861, upon which verdict judgment was entered up for eleven thousand four hundred and four dollars and forty-one cents, and Weems appealed.

*E. J. Wilson* and *Gray, Botts & Baker*, for appellee, cited Williams v. Randon, 10 Texas, 74; Henderson v. Kissam, 8 Texas, 46; 1 Bland, 213; Edwards on Receivers, 2; Compton v. Bearcroft, 2 Bro. C. C., 158; Middleton v. Dodswell, 2 Dan. Ch. Pr., 1734; 13 Vesey, 266; Lloyd v. Passingham, 16 Id., 59; 4 Price, 346; 4 Paige, 574; Walker v. Wild, 1, Madd. Ch. R., 528; 1 Smith's Ch. Pr., 501.

*Ballinger, Jack & Mott*, for appellee, cited Wynn v. Lord Newborough, 3 Brown C. C., 88; Pitt v. Snowden, 3 Atkyn, 750; Brandon v. Brandon, 5 Mad., 473; Tillinghast v. Champlin, 4 Rhode Island, 173; Kerr on Receivers, 239; Edwards on Receivers, 485.

GOULD, J. The first and principal question is, whether the appointment of Brooks as receiver expired at the next term of court after it was made. Ordinarily the appointment of a receiver continues during the pendency of the suit, until the decree is rendered. In the forms of such orders, at least in some of them, no time is expressed. (Edwards on Receivers, 563, 381–2; Williamson v. Nilson, 1 Bland, 428–438).

Such being the general rule, growing out of the fact that the reasons for the appointment usually continue to operate until the case is tried and decided, it follows that where the

term of his office is intended to be limited, that intention should be expressed. In this case, that part of the order which makes the appointment, and where we would naturally look for the limitation, not only fails to express any such purpose, but in its terms makes the appointment according to the prayer of the petition, which was for a receiver " to take possession of " said trust negroes, now remaining on said plantation, and to " hire out the same from year to year, until the termination of " this cause." It is true that the order proceeds to instruct the receiver to hire the slaves for a year, and to report his actions at the next term of the court, and it is argued that this shows the intention that his office should not extend beyond that term. It is usual and proper to embody in the order instructions for the guidance of the receiver, and to which he looks to see the nature and extent of his duties and authority. But we think the inference unauthorized, that the term of office does not extend beyond the period of time to which the original instructions extend, or rather the time at which the officer is required to report. In due time instructions were given for another year. That they were given by consent of parties certainly does not make them any less the instructions of the court to its officer.

It is argued that the temporary notice of the appointment is to be inferred from the fact, that it was made at chambers, before answer, and so far as the record shows, without notice. If, in fact, there was no notice or consent, it was irregular to make the appointment, unless the case was one of urgency, where irreparable injury might result from delay (Kerr on Rec., p. 137; 1 Dan. Ch. Pr., pp. 1734–5), or where defendants, or some of them, were out of the jurisdiction of the court. Verplanck v. Ins. Co. (2 Paige, 448). That the appointment was made as it was, shows, that in the opinion of the judge by whom it was made, the circumstances of the case justified it, but can assuredly have but slight weight in constructing the order. The question before us is not whether the order was erroneous or not, but what is its true meaning :

and we are satisfied that it conferred on Brooks the office of receiver whilst the suit was pending, unless he was sooner discharged.

It is contended that under his instructions the receiver had no power to collect the notes which he took for the hire of the slaves. The order does not in terms confer such authority. The usual and better practice is, to give such instructions as leave no ambiguity as to the duties and authority of the receiver. The nature of the office and of the duties expressed in the order, are perhaps such as to justify the conclusion that Brooks was authorized to receive payment of notes taken by an( yable to himself, and remaining in his hands at maturit| But whether he had such authority or not, if, as alleged, he ( collect and thereby place it out of his power to account fo ae notes, otherwise than by producing the money, and fa d to do so, it is clear that he did not faithfully discharge his duties as receiver, and his sureties are liable on their bond.

It is further objected that the receiver Lathrop had no authority to sue on the bond of his deceased predecessor Brooks, because an order of court was not first obtained authorizing such suit. The record shows, however, that the suit was brought in the same court where the original cause was pending, and that previous to the trial, that court made an order approving his action in bringing suit on the bond, and instructing him to proceed with its prosecution; and this was alleged in an amended petition. Any defect of authority which may have affected the original petition was cured by the subsequent order and amendment. It is not deemed necessary, therefore, to pass upon the general question of the authority of a receiver to institute a suit, more especially a suit on the bond of a former receiver, without first obtaining an order to do so. The liberality of our practice, admitting even of amendments setting up new causes of action, would leave it only a question as to the costs previous to the amendment.

But it is said that the executrix of Brooks (whose estate is

alleged to be insolvent) and his securities had the right to have his accounts passed before the court, and to turn over the property and have the bond canceled.  If they had applied to be allowed to do so, doubtless the privilege would have been accorded and liberal terms conceded to them.  Not having done so, it would seem that the court had no means of ascertaining what was due from Brooks.  As he was dead, the ordinary remedy of proceeding against the receiver for contempt of court was impracticable, and under these circumstances it has been held the remedy is against the sureties on their bond (Ludgater v. Channell, 3 Mac and Ger. (49 Eng. Ch.), 175 ; Kerr on Receivers, 239, 240).,

The objection that Lathrop was not a party to the bond has no force.  Under the order of the court he represents all parties interested in having the bond enforced, and had the right to sue in his own name.  No authority to use the names of others was required.

We have disposed of the questions argued in appellant's brief, and regard them as decisive of the case.  Whilst in doing so we have endeavored to follow the rules and decisions of Courts of Equity, it is proper to observe that the difference in the organization of our courts makes these rules often inapplicable under our practice.  We have no statute regulating the subject of receivers.  Though the authority of the courts to appoint them has been long recognized, yet the record in this case shows that the practice in making such appointments, and in calling the officer to account, is unsettled and loose.  Appellee Lathrop was appointed without at first any designation of his duties.  Brooks appears to have acted for at least ten or eleven years without ever having been called to pass his accounts, and without any instructions as to the investment of moneys.  On the trial of this case the court withdrew from the jury the consideration of any other matters than those occurring in 1859 and 1860.  Appellee, however, makes no complaint on this point.  He was allowed interest on the amounts due for those years, although no order of court had been made

requiring the payment of the money into court. The absence of such an order would be no excuse to the receiver under the English Equity rules, requiring him to account. (Potts *v.* Leighton, 15 Vesey, 273.) No exception was taken at the trial or ,in the motion for new trial to the charge of the court on the subject of interest. If the point were properly before us, we cannot say that it was erroneous to charge interest against the receiver under all the circumstances of the case.

    The judgment is affirmed,

                                      ·Affirmed.