J. S. McCLATCHEY et al., Appellees, v. FRED MARQUIS, Appellant.

PRINCIPAL AND SURETY: Release of Surety—Non-release by Change in Order of Court. The surety on the bond of a receiver appointed to take charge of grain and await the further orders of the court is not released because, without notice to the surety, and without his consent, the court subsequently ordered the receiver to *convert* the grain into money, said bond specifically calling for a full accounting of all money received.

Headnote 1: 34 Cyc. p. 507 (Anno.)

Headnote 1: 21 R. C. L. 1069.

*Appeal from Monona District Court.—A. O. Wakefield, Judge.*

FEBRUARY 15, 1927.

Action to recover on a receiver's bond. Defendant filed answer pleading matters alleged to release the surety, to which answer demurrer was interposed, and sustained by the court. Defendant elected to stand on its demurrer, judgment was entered accordingly, and he appeals.—*Affirmed.*

*Jepson, Struble, Anderson & Sifford,* for appellant.

*Prichard & Prichard,* for appellees.

ALBERT, J.—Appellees herein were tenants on certain land owned by one C. A. Freise. On the 16th day of July, 1921, Freise commenced an action against these tenants, praying a landlord's lien against their crop, and asking that a receiver be appointed to take charge of said crops; whereupon one C. H. Bradbury was duly appointed receiver. He duly qualified, took possession of the property, and sold the same. The trial of the case of Freise against his tenants resulted in a judgment in favor of the tenants against Freise for $750, and $109.67 costs. Bradbury, receiver, in the intermediate time had died, and the executrix of his estate was substituted receiver, and judgment was entered against the estate of Bradbury, deceased, for the aforesaid amounts. The estate of Bradbury refused to pay the appellees, and the allegation is that the estate is bankrupt, and unable to pay the claim. Copy of the bond of Bradbury is set out, and judgment is asked against Marquis, surety on said bond, for the sum of $859.67, with 6 per cent interest from the the 16th day of September, 1924, which was the date of the judgment against the Bradbury estate. The defendant, in an amended and substituted answer, pleads that the order of court appointing Bradbury as such receiver reads as follows:

"Upon reading the petition in the above entitled action, it is hereby ordered by the court: That C. H. Bradbury is hereby appointed receiver to take charge of the wheat and oats grown and raised upon the premises, to harvest the same, have the same threshed, and remove the same to some storage elevator, and do all things necessary for the protection of said crop

of wheat and oats, and preventing the waste thereof, and to await further order of this court.''

Another order by the court which is pleaded is as follows:

''The receiver herein having made application to pay out of the proceeds of the property in his hands claims for labor preferred and labor claims for labor incurred since his appointment, and asking that sufficient of the grain be sold to pay such claim, and also asking what disposition shall be made with the grain in his hands, now, therefore, it is hereby ordered by the court that the receiver herein be, and he is hereby, authorized to sell at private sale, at the market value of such grain, sufficient thereof to pay the claims so filed with him and by him incurred as such receiver; that, as to the balance of the grain in his hands and in the elevator, that he hold the same therein, or that he make such arrangements with the elevator companies for the payment thereof at such a day that he will demand settlement therefor, and if held in the elevator, to make such arrangements for storage and insurance thereon.''

The answer further alleges that these orders limited the duties and responsibilities of said receiver to the care, protection, and preservation of said wheat and oats, and in no way made said receiver responsible for the money derived or to be derived from the sale of said grain thereafter; that all is shown on the face of said bond and said order appointing said receiver; that said order was duly entered of record, and all pleadings, files, and records in said case of Freise v. Edward Mc Clatchey et al. are made part hereof by reference thereto; that thereafter, and without knowledge or consent of the defendant, Marquis, as surety on said bond, and without any notice upon said defendant, the court entered its further orders, authorizing said receiver to sell said grain and convert the same into money. This order was as follows:

''Receiver, having made application to stack the grain and to hire and pay labor thereon, procure the insurance and pay for the same, to sell sufficient of the grain of the defendants to pay for such labor and insurance and necessary expenses therefor, and to sell the plaintiff's share of the grain and turn the proceeds therefor over to him, now, therefore, it is hereby ordered by the court that the receiver herein cause the grain to be stacked, to hire and pay for labor therefor, and to procure insur-

ance thereon, and to pay for same, and to sell sufficient of the grain of defendants and necessary expenses therefor, and at the receiver's option to sell plaintiff's share of the grain and turn the proceeds therefor over to him.''

Later, without the knowledge or consent of the appellant, surety on said bond, or without any notice to him, a further order was entered, reading as follows:

"The receiver having made application to sell the wheat grown by the defendants now in his hands, at the price of 94 cents for that grown by Edwards, and 92 cents for that grown by McClatchey, as being for the best interests for said parties as to the price therefor, the receiver herein is therefore ordered and authorized to sell said wheat for the above-mentioned prices and retain the proceeds thereof till the further order of this court.''

It is further alleged that all of these orders were made without the knowledge or consent of this surety; that said orders above set out materially changed the nature and character of said receivership, and materially changed the obligations and duties of said receiver, thereby making him responsible for money coming into his hands from the sale of said grain, instead of said grain itself, as provided by the order first appointing said receiver and providing for his bond,—all without the knowledge or consent of the defendant, and without any notice to him of the same; that, by reason of said material changes in the duties and obligations and responsibilities of said receiver, and in the nature and character of said receivership, this defendant, as such surety, is discharged and released from liability on said bond. Wherefore he prays that plaintiffs' petition be dismissed.

To the answer of the appellant, appellees demurred, which demurrer was sustained. Hence this appeal.

The material part of the bond in question is as follows:

"Now, if the said C. H. Bradbury, as such receiver, will render a true account of his office and of all his doings therein to the proper authority, when required thereby, or by law; that he will promptly pay over to the officer or person entitled thereto all moneys which may come into his hands by virtue of his office; that he will promptly account for all balances of money remaining in his hands at the termination of his office, will

exercise all reasonable diligence and care in the preservation and lawful disposal of all money, books, papers, and securities, or other property appertaining to his office, and deliver them to his successor, or to any other person authorized to receive the same; and that he will faithfully, impartially, without fear, favor, fraud, or oppression, discharge all duties now or hereafter required of his office by law, and the sureties on his bond shall be liable for all money or public property that may come into the hands of such officer at any time during his possession of such office,'' etc.

It is insisted by appellant that the demurrer should have been overruled because the matters pleaded in the answer show a good release of this surety. He urges that the substance of the original order appointing the receiver simply provided that he was to take possession of this property and hold the same *in specie,* and turn it over to such parties as should be determined to be entitled to the same; that, therefore, the liability of the surety was limited to the matters provided in the original order of appointment.

The trouble with this argument is, first, that the original order of appointment provided not only that the receiver should take possession and hold said property, but further, that he should do all things necessary for the protection thereof and the prevention of waste, and ''await the further order of this court.'' Aside from the inherent power a court of equity has over property *in custodia legis,* a special provision is made in this order, reserving to the court the power to make any further order it may see fit, relative to this property; and if the liability of a surety on a bond, under such circumstances, were to be measured by the original order of appointment, this order is sufficiently broad to authorize the court to make an order to convert this personal property into money at any time it might see fit; and so long as that power exists, the surety on the bond must sign in contemplation thereof. He is bound to know the law. It would create a peculiar condition in matters of this kind if it were incumbent upon the court, on every occasion that it might wish to make some order with reference to property in its custody, to notify the surety on the bond, before such order could be made effective without releasing the surety. We know of no such law, and are cited to none which would support this

proposition. Further than this, however, the bond filed herein, on which appellant is surety, is very broadly termed. It provides that the receiver will render a true account of his office and his doings therein; that he will promptly pay over to the officer or person entitled thereto all moneys which may come into his hands by virtue of his office; that he "will exercise all reasonable diligence and care in the preservation and lawful disposal of all money, books, * * * or other property appertaining to his office, and deliver them to his successor; or to any other person authorized to receive the same; and that he will faithfully, impartially, * * * discharge all duties now or hereafter required of his office by law, and the sureties on his bond shall be liable for all money or public property that may come into the hands of such officer at any time during his possession of such office."

Numerous Iowa cases are cited to us on the proposition that the authority of a receiver is to be determined and measured by the order of appointment and such subsequent directions as may from time to time be given. These are all cases in which the receiver himself was called to account for misfeasance or malfeasance in office. They give us no aid on this proposition.

We are also cited to other Iowa cases to the proposition that, in builders' contracts, substantial material changes may be of such character as to release the surety. They do not aid us on this proposition.

Our attention is also called to other Iowa cases on the distinction, well recognized in law, between the construction of the obligation as between gratuitous and paid sureties. These do not aid us on the point in question here.

It is our opinion that the terms and provisions of this bond, which in fact and in law measure the liability of the surety, are sufficiently broad to cover a case where a receiver sells personal property in his custody, as such, under order of court; and if, as in this case, he afterwards embezzles or does not account for such funds, there is no reason why the sureties on the bond should not be liable. As sustaining this ruling, see *Weems v. Lathrop*, 42 Tex. 207; *Claflin Co. v. Gibson* (Ky.), 51 S. W. 439; *Commonwealth v. Leachman* (Ky.), 55 S. W. 430.

The ruling of the district court in sustaining this demurrer is right.—*Affirmed.*

EVANS, C. J., and DE GRAFF and MORLING, JJ., concur.